[Civ. No. 8821. First Appellate District, Division One.—April 17, 1933.]

ADELINE MARSHALL, Respondent, v. J. J. SMITH, Appellant.

E. M. Rea and Langton A. Madden for Appellant.

Frank V. Campbell and T. G. Negrich for Respondent.

GRAY, J., *pro tem.*—A jury awarded respondent damages in the sum of five thousand dollars for injuries received by her in a collision between an automobile in which she was riding as a guest and another owned and operated by appellant. From the judgment entered on such verdict the latter appeals, urging as grounds for reversal: (1) That the amount of the verdict is grossly excessive and was based upon passion and prejudice; (2) that the evidence is insufficient to justify the verdict; and (3) that the instruction on damages is erroneous.

"Where a verdict is attacked for insufficiency of evidence, the power of the appellate court begins and ends with the inquiry whether there is substantial evidence, contradicted or uncontradicted, which in and of itself will support the conclusion reached by the jury. (*Treadwell* v. *Nickel*, 194 Cal. 243, 260 [228 Pac. 25]; *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [239 Pac. 709, 41 A. L. R. 1027].) . . . The question of excessive damages is one which is first addressed to the trial court, and appellate courts can interfere only when the damages are so exorbitant as to suggest, at first blush, passion, prejudice or corruption on the part of the jury." (*Kleem* v. *Chapot*, 112 Cal. App. 553, 556 [297 Pac. 574, 575].) Here, as in the cited case, a motion for a new trial was denied by the trial court and the

evidence not only supports the verdict but fails to show it to be excessive.

Paid hospital and medical bills in the sum of three hundred seventy-six dollars are undisputed. Respondent testified that she received temporary, although painful, injuries to her chest and back and permanent injuries to the muscles at the back of her neck, which so greatly limited and made painful beyond such limitation the rotation of her head that she was nervous in traffic, tired easily at housework and shopping, and frequently awakened from sleep. She was confined in a hospital for twelve days and thereafter received medical treatment for seven months. The physician attending her at the hospital testified that the muscles had been torn and that she suffered much pain, which he alleviated by opiates and sedatives. The doctor who next treated her stated that examination on her discharge from the hospital disclosed a painful swelling at the base of the skull, in back of the neck, involving the muscles which control certain movements of the head. He further said that, at time of trial, there was probably a permanent decrease in rotation of forty per cent and a slight curtailment in the up and down motion of her head. A specialist in physio-therapy, to whom she had been referred by the preceding doctor, and who was treating her at time of trial, testified that the thickening and constriction of the neck muscles limited rotation of her head more than one-third of normal and the upward and downward movement to a less extent, that very slight improvement would be obtained by future treatments and that the impingement of the terminal nerve in scar tissue made painful motions beyond such limitations. A doctor appointed by the court at appellant's request to examine respondent during the trial fixed the limitation in her ability to move the head from right to left at about thirty to forty per cent. Two associated doctors, testifying on behalf of appellant, estimated the limitation in rotation at between fifteen and twenty per cent.

Appellant claims that because the evidence merely shows that respondent kept house for herself and daughter and is silent as to her following any gainful profession, business or occupation, the instruction on damages erroneously permitted consideration of ''the plaintiff's physical ability to maintain herself before the accident as compared

with her condition and physical ability to maintain herself after the accident; also the effect, if any, of said injuries, if any, on her capacity to engage in her usual profession, business or occupation". This argument is well answered by the following excerpt from *Davis* v. *Renton,* 113 Cal. App. 561, 564 [298 Pac. 834, 835] : "As held in *Gotsch* v. *Market Street Ry.,* 89 Cal. App. 477 [265 Pac. 268], the impairment of the ability of a woman to work is an injury to her personal rights wholly apart from any pecuniary benefit the exercise of such power may bring, and if her injury has lessened this power she ought to be able to recover damages therefor regardless of whether she was engaged in household duties or employed for pecuniary gain."

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.